JOHN DEN ex dem. BUTLER NEWCOMB v. WILLIAM DOWNAM and PETER CAMBLOSS.

" The supplement to the act making lands liable to be sold for the payment of debts, passed Nov. 28, 1831, enacts " that the sheriff's deed shall be good and valid, and received in evidence notwithstanding any variance between the recital in said deed, and the execution by virtue of which, the sale was made, and notwithstanding any variance between the execution, and the judgment on which it issued ; and also that the judgment or execution is to be considered as amended in any particulars, in which the same might by the rules of law and practice, have been at any time amended by the court ; and the judgment or execution to have the same force as if amended."

Den *v.* Downam and Cambloss.

A sheriff's deed is admissible in evidence, although it contains no recital of the advertisements. It has not been deemed indispensably necessary to make such recital. We have no statute requiring it. The want or omission of such recital has been held to impose on the party claiming by means of the deed, the proof that the necessary public notice has been given, and that the sheriff had in this respect fulfilled the requirements of the statute, regulating such sales.

The court will, on a motion for a new trial, be very loth to listen to an objection at bar, which was not raised on the trial.

The minutes of the court are not admissible evidence to shew, that no such judgment as that set forth in the book of judgments, had been rendered by the court. The sole and direct purpose of such evidence is to control the verity of the record, to contradict what is there stated, and therefore ought to be rejected.

The law does not expect that the entry shall be made in the book as soon as the judgment is pronounced by the court, or that it shall be forthwith signed by the judge. There is no time prescribed within which the entry shall be made in the book, or signed. It is therefore not competent to prove by the clerk of the court, that the judgment was not signed upon the record in the book of judgments, until after the commencement of the action.

A witness may be dismissed whose interest is discovered, after he has undergone much examination. But a party who might originally have interposed an objection, may by his own conduct, waive it. If a witness is produced by the party against whom he is interested, the other party may cross examine him as to all matters pertinent to the issue on trial. If a party will avail himself of a witness whom he, and not his adversary can exclude, he ought not to be allowed to close his mouth when his adversary would examine him.

---

This was an action of ejectment tried at the November term, 1830, of the Cumberland circuit, before Justice FORD. Several objections to evidence were raised at the trial, which are fully noticed in the opinion of the court. After the counsel on both sides had summed up, Justice FORD charged the jury in substance as follows :

It is not disputed that Jonathan Socwell owned the premises in question in fee simple. Both parties are claiming under him, though in opposition to each other ; Peter Cambloss, under a judgment against him, and Butler Newcomb, under a mortgage from him.

If the judgment against the land, and the proceedings under

Den *v.* Downam and Cambloss.

it, are legal, it must carry the title, because it is the oldest lien by nearly a year; but if the proceedings have not been legal, the mortgage will be the better title. Sufficient proof of the mortgage has been laid before you; and the judgment and execution being public records, exemplified under seal, the law cannot permit them to be disputed or denied. You have only to decide whether the sale under them has been legally conducted.

A legal sale must be founded on an execution, and that execution on a judgment. No such judgment is produced, it is said, as the one described in the execution, there being a variance of ten cents in the costs, between that mentioned in the execution, and the one produced in court; one being twenty-six, and the other thirty-six cents. A misprison of this trifling word will hardly prove this not to be the judgment intended in the execution. It ought rather to be considered a little thing, which the law will not regard. If it be not amendable, and if the execution could be set aside for it, the reversal could not disturb a purchase that was made under it while it remained in force.

The law requires that a sheriff's deed shall recite the execution by virtue whereof he sells any land; but if this deed does not recite a clause that merely distinguishes the debt from the costs, such omission cannot invalidate the conveyance Recital does not mean copy, nor is a true copy usually or perhaps ever inserted. If it recites enough to shew under what execution the sheriff acted, it will be a sufficient recital, though it should omit this and some other clauses.

The sale took place on the 20th of March 1822. Mr. Sheppard first testified, that he gave receipts to the sheriff in full of the execution, as much as twelve months previously to that sale; but afterwards, on seeing two of his receipts bearing date since the sale, one for $184 34 and the other for 40 dollars 25 cents, and both in his own hand writing, it appeared that his memory, and the documents, were in utter disagreement; and unless these documents have been discredited, there must have been owing to him upwards of 200 dollars on the execution at the time of the sale. One of them for 40 dollars 25 cents, seems not to be in the least impeached, and therefore this last sum

Den *v.* Downam and Cambloss.

would appear to have been certainly due. The alteration in the date of the other, he made himself, if you can rely on the oath of the sheriff, corroborated too by Mr. Sheppard's admission, that one of the alterations stares him in the face as of his own making, but that he can give no explanation, as he had forgotten the receipts themselves. It would seem as if the sheriff ought not to be convicted of falsifying the date of this receipt without a clear recollection of Mr. Sheppard that he did not make the alterations himself. But these are questions of fact proper to be submitted to the discernment of the jury.

When payment is set up in avoidance of an execution and of the title of a bona fide purchaser, it ought to be strictly a payment. If Mr. Sheppard was indebted to the sheriff on dealings, and they had made a mutual agreement that the money on Sheppard's execution should be set off against the sheriff's demands, it could not be construed into a discharge of the debt, for then the sheriff would get nothing in satisfaction of his demands but a void execution. An agreement that they would make such set off, would not discharge the execution till the money was raised upon it. To make payment an absolute discharge of an execution, it ought in regularity to be entered upon record, in satisfaction and discharge of the judgment. It then operates as a discharge to all the world. It may indeed affect all parties and privies to a payment without being entered of record, but not strangers and innocent third persons, who purchase at public sales, and pay the money bona fide. If private agreements whereof they had no notice, could be set up to defraud them of their money and title, it would destroy all confidence in public sales. Yet what notice had Peter Cambloss of these private dealings or agreements for making offsets between Mr. Sheppard and the sheriff? If any proof of his knowing or being privy to their dealings has been offered to the court it has escaped my cognizance.

The jury rendered a verdict in favor of the defendants. On the return of the postea, the plaintiff obtained a rule to shew cause, which was argued at the last term. On the argument,

*Field* and *Wall* for the plaintiff, made the following points, and relied on the following authorities:

1. The deed from the sheriff was unlawfully admitted in evi-

dence. It does not truly recite the judgment, nor shew that the sale of the land was duly advertised. *Rev. Laws*, 433.

2. Evidence of the time of the actual entry of the judgment, was overruled. *Rev. Laws*, 481, *sec.* 2; 760, *sec.* 2; 2 *Tidd's Practice*, 857, 860; 4 *Kent Com.* 429; 4 *Cowen*, 457; 4 *Co.* 70, *Hinde's case;* 3 *Halst.* 285.

3. Dan Simkins, the sheriff, was an incompetent witness, on the ground of interest. 1 *Phil. Evid.* 38.

4. The judge erred in his charge with respect to payment, and set off. 1 *South.* 211; 7 *John.* 426; 15 *John.* 443; 6 *Halst.* 54.

5. The verdict was against the evidence.

*Lucius Q. C. Elmer* and *Attorney-General* for the defendants.

1. The recital is sufficient. The errors were amendable. It is not necessary to recite the manner of advertisement. Proof *aliunde* is sufficient, and was made. 1 *Lilly abr.* 416; *Shep. Touch.* 76, 94; 10 *John.* 381; 4 *Cranch* 413; 18 *John.* 7.

2. The evidence was properly overruled. The effort was to contradict the record of the judgment. *Rev. Laws*, 423; 1 *Phil. Ev.* 218.

3. Simkins was not interested. The verdict in this case could not be given in evidence against him; and the statute of limitations precluded any suit against him. 2 *Serg. and R.* 119. He was called and examined by the plaintiff, whereby he was rendered competent for the defendant for all purposes. 3 *Serg. and Lowber*, 361, 437.

4. The charge was correct. 9 *John*, 263; 1 *Cowen*, 46, 640; 4 *Cowen*, 553; *Coxe* 39; 16 *John.* 571.

5. The evidence is sufficient to sustain the verdict.

The opinion of the court was delivered at this term by the Chief Justice,

EWING, C. J. The premises in question formerly belonged to Jonathan Socwell. The lessor of the plaintiff claims them by virtue of a mortgage executed to him by Socwell. The defendant, Peter Cambloss, claims to hold them as purchaser at sheriff's sale under a deed made to him by the sheriff, founded on a judgment of the Court of Common Pleas of the county of

Den *v.* Downam and Cambloss.

Cumberland in favor of Edmund Sheppard against Socwell, and an execution issued thereon. The mortgage bears date, June 3d, 1820. The judgment purports to be signed on the 4th day of June, 1819, and the execution was delivered to the sheriff on the eleventh day of the same month. The sale was made on the 20th March, 1822, and the deed was executed by the sheriff on the 15th day of the ensuing month. The plaintiff seeks on several grounds to set aside the verdict which was rendered for the defendants.

1. Because the judge overruled certain objections made to the admissibility of the sheriff's deed and allowed it to be read as evidence.

Of these objections, one was, that the recital in the deed varied from the execution. The execution directs a certain sum to be raised, as well for the damages sustained by the detention of the debt as for the costs and charges of the plaintiff, and the recital is, that the sum is to be raised for the damages sustained by the detention, and omits the clause respecting the costs and charges; "as for the costs and charges," &c. The other objection was, that the deed did not set forth any public notice given by the sheriff by advertisement for the sale of the premises.

On the argument here, two other objections to the deed were raised which do not appear by the report of the case, to have been taken at the trial. 1st, that there is a difference of ten cents between the amount of costs mentioned in the judgment and in the execution, and 2d, that the judgment was signed on the 4th day of June, 1819, and the execution directs the money to be made of the lands whereof the defendant was seized on the first day of that month.

Since the argument of this cause, the legislature by a supplement to the " act making lands liable to be sold for the payment of debts," have enacted that a sheriff's deed shall be good and valid and received in evidence notwithstanding any variance between the recital in said deed and the execution by virtue of which the sale was made, and notwithstanding any variance between the execution and the judgment on which it issued ; and also that the judgment or execution is to be considered as amended in any particulars in which the same might, by the rules of

Den *v.* Downam and Cambloss.

law and practice, have been at any time amended by the court in which the judgment was rendered or out of which the execution was issued, and the judgment or execution is to have the same force as if amended.

Under the operation of this supplementary act, if the present verdict was set aside, and the cause again brought to trial, the court would be constrained to do what has already been done, admit the deed in evidence notwithstanding the alleged errors of recital, and overlook the differences in the matters amendable. Such being the case, it is now rendered unnecessary for us to examine whether the deed was, as the law stood at the trial, rightfully or wrongfully admitted, since, if the latter, we should be forbidden to set aside the verdict by the discretion we are bound to exercise in granting or refusing new trials. If upon another trial, the deed must be admitted notwithstanding these objections, it is mercy, as well as justice, to the parties, to let the present verdict stand.

The objection taken at the trial that the deed was inadmissible because it contained no recital of the sheriff's advertisements, was properly overruled. It has no; been deemed indispensably necessary to make such recital. We have no statute requiring it. Nor has a deed ever been, on this account, considered or declared invalid. The want or omission of such recital has been held to impose on the party claiming by means of the deed, the proof that the requisite public notice had been given and that the sheriff had in this respect, fulfilled the requirements of the statute regulating such sales. Indeed I do not understand the plaintiff's counsel to insist, here, that such recital is necessary to the validity of the deed. But they now say the proof adduced on the trial was insufficient to shew the due advertisement. I do not find from the report of the case, that this point was made on the trial, and I am very loth to admit a question of this nature to be raised here on a motion to set aside a verdict, if not distinctly taken at the trial. But even if we may listen to the objection, I am constrained to say the testimony of the sheriff was sufficient prima facie evidence that he had advertised in the time and manner directed by law. The public notice in the newspapers was abundantly shewn by

Den *v.* Downam and Cambloss.

their production. The sheriff testified that he made the sale "after having advertised it in the usual manner." "It was made," says he, "on the 20th March, 1822, and I believe advertised as the law directs, two months before hand, as I never made sales of land without doing so. Advertisements were put up in the places required by law, as I never made sales of land on execution without doing so to my knowledge. I presume they were set up by myself, though I might have employed some other person to do it. I have no particular recollection of doing it, but it was my constant practice to do it without a single exception ever known by me." Such testimony, founded on the uniform and unvarying custom of the sheriff, was, I think, sufficient to be submitted to the jury. It was quite as satisfactory as the evidence of an attesting witness who recognizes his handwriting and without the slightest recollection of the transaction, expresses his conviction that he saw the deed regularly executed, because his constant practice was to see such execution before he subscribed his name. The sheriff states that he advertised in the places required by law and for the time the law directs, without specifying the number of places or the length of time. And this testimony is said to be insufficient because inexplicit. When, however, we recollect that not only the sheriff, but the counsel and the court were perfectly familiar with what was, in this respect, required and directed by law, an answer in these terms was, I think, quite satisfactory. And it is evident it was so received at the trial, since the counsel would otherwise, on cross examination, have brought him to greater explicitness.

2. The next reason for setting aside the verdict is, that competent evidence offered by the plaintiff was overruled.

The defendant, in support of the sale and sheriff's deed, had given in evidence an exemplification from the book of judgments of the judgment mentioned in the sheriff's deed in favor of Edmund Sheppard against Jonathan Socwell, containing in usual form, the warrant of attorney, the declaration and the judgment, and purporting to be signed the 4th day of June, 1819. The plaintiff afterwards in the course of his evidence, offered to produce "the minutes of the court of Cumberland county, as containing no entry or order of judgment between the parties."

Den *v.* Downam and Cambloss.

I use here the language of the report of the trial. The profer red evidence was overruled. The design of this evidence was to shew that no such judgment as that set forth in the exempli-fication, had been rendered by the court.

The book of judgments was introduced by our practice act, which directs that instead of the ancient common law judgment roll, which shall no longer be made up, the clerk shall, when any civil cause is finally determined, enter in a book to be kept for the purpose, the warrants of attorney, declaration, plead-ings, proceedings and judgment, to be signed by one of the judges ; and this entry shall constitute the record. The exem-plification which was in the present case produced, was of this entry Now if this record, and as we have just seen, the entry is expressly made a record by the act of the legislature. spoke the truth, there was a judgment, and such a one as was meet to sustain the execution and the sheriff's sale and deed. And if entitled to the ordinary respect due to a record, the evidence offered to contradict it was inadmissible. Lord Coke says, "The rolls " and the book of judgments as already noted, stands in the place of the rolls of his day, " being the records or memorials of the judges of the courts of record, import in them such incon-trollable credit and verity as they admit no averment, plea or proof to the contrary." *Co. Lit.* 260, *a.* Phillips says, "A record is conclusive proof that the decision or judgment of the court was as is there stated, and evidence to contradict it will not be ad-mitted." 1 *Phil. Evid.* 238. There are many cases which sustain this doctrine. *Field* v. *Gibbs,* 1 *Peters,* 146 ; *Crosswell* v. *Byrnes,* 9 *John.* 287 ; *Green* v. *Ovington,* 16 *John.* 55 ; *Garrick* v. *Wil-liams,* 3 *Taunt.* 550. In *The King* v. *Hooper,* 3 *Price Exch. Rep.* 495, it was held that the indorsement of the clerk of the enrolments of the day of the enrolment of a deed of bargain and sale by way of date, is part of the record, and cannot be averred against ; and that evidence is not admissible to shew that it was in fact enrolled on some other day, although the date was written on an erasure. The cases cited on the argument by the plaintiff's counsel do not maintain a different doctrine. In *Griswold* v. *Stewart,* 4 *Cowen,* 457, it was held that a terre ten-ant might plead to the scire facias that the original defendant was dead when the judgment against him was rendered. One of

the reasons given by this court in *Johnson* v. *Darrah*, 3 *Halst.* 285, for allowing the time when an execution was recorded to be shewn, was that the statute does not require the clerk to make a record of the time of recording an execution. In *Hinde's case* there cited from 4 *Co.* 70, the court say, " Records import in themselves truth and conclude all men from denying any thing appearing within the record. But to take averment which stands with the record, and which doth not impugn any thing apparent within the record, the law doth well admit and allow." The sole and direct purpose of the evidence offered by the plaintiff, on the present occasion, was to control the verity of the record, to contradict what is there stated, and it was therefore very properly rejected. On the argument, it was said this rule applies only to parties and privies who alone can bring a writ of error. The cases referred to in 4 *Cowen*, 458, do not serve satisfactorily to shew that strangers may, and that parties and privies may not, contradict a record ; nor indeed can I understand the court in that case to have used them for that purpose. To " impeach " in the language of the court means to shew that the judgment was erroneous, not to deny its existence. To allow persons not party or privy, to avoid a judgment by plea because the original defendant was dead on the day it was given, is not directly to contradict the record, but to shew that the judgment as is said of the one, (*Warter* v. *Perry*, *Cro. Eliz.* 199) was erroneous, and as is said of the other (*Randal and wife*, 2 *Mod.* 308) was manifestly bad, in the only mode whereby a person who could not bring a writ of error might avail himself of an error in the judgment. The averment " stands with the record " and does not " impugn any thing apparent within " it. The expression attributed to Lord Holt in 1 *Lord Raym.* 669, is not inconsistent herewith. When he says, the terre tenants " being strangers, may falsify," he does not, I apprehend, mean to say that a stranger may shew against the face of a record that no such judgment was rendered. In the case of *Penn* v. *Meeks*, 1 *Penn.* 151, proof to contradict the entry in the book of judgments was not admitted, but the judgment was held void for want of jurisdiction apparent on the record.

It was asked if the entry has been made by the clerk and signed by the judge in the book of judgments when in fact no such

judgment was ever rendered, is there no relief? There is, no doubt, full and adequate relief, but not to be obtained in this way, by impugning the record by contradictory evidence.

The plaintiff, afterwards, proposed to prove by the clerk of the court, that the judgment was not signed upon the record in the book of judgments at the time of the execution of the mortgage nor until after the commencement of this action. An objection to this proof was sustained by the court.

The law does not expect that the entry will be made in the book as soon as the judgment is pronounced by the court, nor that it shall be forthwith signed by the judge. On the contrary, it obviously contemplates the signing at some subsequent time, for it directs the signing to be " as of the day on which the judgment was entered." Nor is there any time prescribed within which the entry shall be made in the book or signed. Such being the law, the proposed proof from the clerk, was manifestly improper, since, other things being right, the entry might have been made and signed even after the commencement of this suit, and the validity of the judgment and the sanctity of the record would not have been thereby diminished or impaired. If the design was to shew by the clerk's testimony, that the 4th day of June was not the day on which the judgment was entered on the minutes of the court, so that it could not operate on and from that day, the evidence was incompetent, since the act requires the clerk to make the day on which judgment was entered, the date of the signing ; and his verbal declaration ought not to be admitted to countervail and falsify his official act in writing.

3. The next reason for setting aside the verdict is that the court admitted the sheriff, an incompetent witness, to be examined on the part of the defendants.

The time and circumstances under which this admission was made are necessary to be understood.

The sheriff was first called by the defendants to shew that the sale had been duly advertised, and was examined and cross examined without objection. The defendants having rested their evidence in defence, the plaintiff in reply and to destroy the validity of the sale and deed, proposed, among other things,

to shew that the judgment had been paid off and satisfied by the sheriff to the plaintiff prior to the sale. To establish this fact, he called the sheriff, who, at his request produced a book con. taining certain receipts, and testified that the book was his dock- et, and that the receipts on it were receipts given to him on ac- count of the execution by the plaintiff, Sheppard. Sheppard had been just before examined, by the plaintiff, to prove that he had received from the sheriff, satisfaction of the judgment be- fore the sale and was now again called to give an explanation of these receipts, two of which were subsequent to the sale, the date of one of them appearing to have been in part altered. After his examination, the defendants proposed again to call the sheriff " in confirmation of the receipts and to explain the al- terations in one of them." An objection was now interposed by the plaintiff that the sheriff was incompetent on the ground of interest. But the objection was overruled and the sheriff examined.

As the cause stood when this objection was interposed, it ap- pears to me the plaintiff could not avail himself of it, even if it was true and would have been sufficient, in case the sheriff had been then for the first time called. A witness may doubtless be dismissed whose interest is discovered after he has undergone much examination. But a party who might originally have en- forced an objection, may by his own conduct waive it. The plaintiff on this occasion himself called and examined the sheriff, as his own witness, and to support a distinct ground which he proposed to urge against the deed. And this too without appa- rent necessity, because the hand writing of Sheppard to the re- ceipts might have been proved by some other person. The en- quiries proposed to be made of the sheriff were strictly in the nature of a cross examination, and to shew that the receipts, the plaintiff had produced, were real,. genuine receipts, and ought to be listened to as they actually read. The plaintiff, it is to be observed, had produced these receipts, and the farther exam- ination was not to impugn or destroy them but to shew them entitled to respect. Nor were the enquiries, the less to be re- garded as a cross examination because offered some time after, and not precisely at, the close of the principal examination. The cases we read in the books maintain even a broader rule than is

Den *v.* Downam and Cambloss.

necessary to support the examination of the sheriff. In *Webster* v. *Lee*, 5 *Mass. Rep*. 334, it was held that if a witness is produced by the party against whom he is interested, the other party may cross examine him as to all matters pertinent to the issue on trial. In *Morgan* v. *Bridges*, 2 *Starkie's cases*, 314, it was held that a witness called, sworn and examined by the plaintiff, although merely as to the formal proof of a document, might be cross examined and was to be considered as a witness for all purposes, although the party on the record was but nominal and he was the real defendant. In *Rex* v. *Brooke, ibid*. 472, on an indictment for perjury, the attorney for the prosecution was called and sworn and produced a document but was not asked any question on the part of the prosecution. It was held that the defendant was entitled to cross examine him. In *Jackson* v. *Varick*, 7 *Cowen* 238, one Pelletreau who was interested to testify against the defendants was called by them to prove the execution of a bond to which his name appeared as a subscribing witness. He was sworn generally in the cause and denied that he witnessed the bond. The court held that he might be examined at large by the adverse party and that the defendant could not afterwards question his competency or credibility

The competency of the witness, so far at least as it operates in the present case, is consonant with right reason and just principle. If a party will avail himself of a witness whom he and not his adversary can exclude, he surely ought not to be allowed to close his mouth when his adversary would examine him.

4. The plaintiff farther complains that the verdict was against the evidence.

The plaintiff, as already mentioned, sought to establish by way of defence against the sale and deed, that the money due on the execution had been paid by the sheriff to Sheppard, prior to the sale. And on this point his counsel argues that the evidence on his behalf so manifestly outweighs the other scale, that the verdict should have been for him. Without undertaking the task so properly belonging to a jury, of estimating the relative merits of Mr. Sheppard and the sheriff, there seems to me two incontrovertible facts, which most persuasively shew that the whole amount ordered to be raised by the execution

Den *v.* Downam and Cambloss.

had not been paid or satisfied prior to the sale, and that if the jury so supposed they were right. In the first place, the two receipts, of November 1819, for 160 dollars, and of 9th August, 1822, for 184 dollars 34 cents, did not reach the amount to be levied. They make together, 344 dollars 34 cents, which, according to the indorsement on the execution directing the sheriff as to the amount to be raised, is the sum due for the principal and interest of the plaintiff's debt. But by the same indorsement, the farther sum of 40 dollars 25 cents, was directed to be levied for the costs. Now if these two receipts had both borne date prior to the sale, instead of one of them afterwards, the real date of which was the object of some enquiry on the trial, yet it is manifest that the whole amount would not have thereby been paid or shewn to have been paid. In the second place, another receipt was produced, bearing date on the 25th April, 1823, for 40 dollars 25 cents, on this execution. And Mr. Sheppard, speaking of it in his testimony, said, "This is drawn in my hand writing and is under my signature. There is no alteration in it." It is true, he said he did not remember receiving the money mentioned in it, nor of giving such a receipt, and that he had received no money of the sheriff after the sale that he could recollect. But if he had forgotten the receipt, he might well have forgotten the transaction out of which the receipt resulted, especially after a lapse of several years. And there seems in the testimony of the sheriff, a satisfactory explanation of the want of recollection by the other of the receipt of money. The sheriff said, "To the best of his recollection he never paid Sheppard a dollar of money in his life. They were all offsets. He found a number of vendue accounts against Sheppard and recollected that some of them were offset." And he farther testified, that in a settlement at the date of the last receipt, Sheppard gave him the receipt and also a due bill for the balance due him on all accounts between them. The fact just mentioned, that the first two receipts are for the amount of the debt and the third receipt is for the amount of the costs, may also serve to explain the insertion and subsequent erasure of the words "in full" in the second receipt, and some of the impressions of the plaintiff, Sheppard, respecting the settlement. The expressions used by the sheriff at the sale, as testified by Shep-

Den *v.* Downam and Cambloss.

pard and Westcott, are somewhat equivocal, but cannot, I think, stand in competition with the two prominent circumstances which I have mentioned.

5. The remaining complaint of the plaintiff is against the judge's charge.

I do not understand the charge, in the part excepted to, precisely as is done by the plaintiff's counsel. When the judge says the payment set up in avoidance of an execution and of the title of a bona fide purchaser ought to be strictly a payment, I do not understand him to mean a payment in money in opposition to a payment by offsets or otherwise ; but an actual payment, a satisfaction or discharge of the debt in opposition to an agreement for its future or subsequent satisfaction. And this appears, I think clearly, by the sentences which immediately succeed. " If Mr. Sheppard was indebted to the sheriff on dealings, and they had made a mutual agreement that the money on Sheppard's execution should be set off against the sheriff's demands, it could not be construed into a discharge of the debt, for then the sheriff would get nothing in satisfaction of his demands, but avoid execution. An agreement that they would make such setoff would not discharge the execution till the money was raised."

The doctrine laid down by the judge, thus understood, was, I am inclined to think, entirely correct; and that an agreement that the moneys arising from the sale should be applied to the discharge of the demands of the sheriff against the plaintiff, would not destroy the validity of the execution, nor preclude it from being farther used, nor render it *functus officio*. For until the sale made and the money raised, the demands of neither the sheriff nor the plaintiff are satisfied ; and the plaintiff has therefore as strong an interest an ever in the use of the execution. It is for his benefit the money is to be raised, whether it is to pass over into his pocket or to remain in the hands of the sheriff. But if the doctrine as stated by the judge was doubtful or even erroneous, it does not appear to me the plaintiff would thereby be entitled to a new trial. The question was whether the whole amount of the execution had been satisfied to Sheppard in such manner as to destroy any farther force in the writ. Now the judge instructed the jury that an actual satisfaction would have

Den *v.* Downam and Cambloss.

that effect, and submited to them the decision of the question of fact. If then the view I have already taken of the case under the next preceding reason be correct, and there was an actual balance of 40 dollars 25 cents, if no more, then remaining undischarged to the plaintiff, and which was, more than a year afterwards, accounted for and satisfied to him, the objection against the sale was not sustained and the verdict in this respect was right.

Rule discharged.

CITED in *Den* v. *Philhower & Sowers,* 4 *Zab.* 800 ; *Den* v. *Ashmore,* 2 *Zab.* 269 ; *Den* v. *Mulford,* 1 *Zab.* 505 ; *Den* v. *Tunnis,* 1 *Dutch.* 663 ; *State* v. *City of Newark,* 3 *Dutch.* 196.